(129 So. 320)

## ARMOUR FERTILIZER WORKS v. COX.

### I Div. 900.

Court of Appeals of Alabama.
June 24, 1930.

Steiner, Crum & Weil, of Montgomery, for appellant.

Quincey W. Tucker and Woodford Mabry, both of Grove Hill, for appellee.

BRICKEN, P. J.

Appellee sued appellant on the common counts. The trial judge, sitting without a jury, gave judgment for the plaintiff, from which the defendant appeals.

Appellant was a foreign corporation, engaged in the manufacture and sale of commercial fertilizer, with its principal place of business in this state, in Montgomery. Service of the summons and complaint was first had upon one Coleman, as the alleged agent of appellant in Clarke county, but on motion of defendant, that service was quashed. While in attendance upon the court as a witness on the hearing of that motion, one Pratt, who was division manager, and the regularly designated agent of appellant, residing in the city of Montgomery, was served with a copy of the summons and complaint. The defendant moved the court to quash the service upon Pratt, and also pleaded in abatement, on the ground that it was not doing business by agent in Clarke county at the time of the institution of suit. The rulings of the trial court on the motion and plea were adverse to defendant, and they are assigned as error. While under the evidence it may be doubted that appellant was doing business in Clarke county by agent, at the time of the institution of suit, which would authorize suit

against it there (General Motors Acceptance Corp. v. Home Loan & Finance Co., 218 Ala. 681, 120 So. 165), in the view we take of the merits of the controversy, a decision on that question is unnecessary.

The material and determinative facts are not in dispute. In February, 1928, appellant received through its traveling salesman an order from appellee for some 80 sacks of fertilizer, to be shipped from its plant at Montgomery. At the time, appellant had an order also for a shipment of fertilizer—something less in tonnage than a carload—to one Coleman, the father-in-law of appellee. Both Coleman and appellee lived at or near Whatley, Ala., a station on the Southern Railway in Clarke county, and the shipment was to be made to that point. Both shipments were loaded in the same car, and in due course shipped out as a carload, freight being charged by the carrier at carload rates. The car was consigned to Coleman, since under the rules of the carrier, two consignees, under the circumstances, were not permitted. Coleman's shipment was "open," while appellee's, agreeable to his order, was "order notify." Appellant drew its draft on Coleman, the consignee, for the amount due by appellee, and with the bill of lading attached, was sent to the Bank of Grove Hill for collection. Upon the arrival of the shipment at destination, Coleman notified appellee of its arrival, and that both shipments were contained in the same car, and also informed him of the fact that the draft and bill of lading for his fertilizer were in the Bank of Grove Hill, and that the draft would have to be paid before the car could be unloaded. Thereupon, appellee gave to Coleman his check on the Bank of Grove Hill, payable to appellant, for the amount due for the fertilizer shipped him, plus some few dollars to cover the expense of unloading, inclosing the check and a note, requesting the bank, in the event he did not have sufficient funds to his credit, to pay the check. He inclosed this check and note in an envelope, sealed it, addressed it to the cashier of the Bank of Grove Hill, and delivered it to Coleman, who presented it to the bank, whereupon the draft was paid, and the bill of lading surrendered; the bank forwarding to appellant, at Montgomery, its cashier's check for the amount. Immediately thereafter, Coleman, at appellee's request, or with his consent, unloaded the fertilizer from the car into his warehouse, having informed appellee that he could get it out whenever he wished.

Some three or four weeks after the arrival of the car, and after the payment by appellee of the draft, and after the fertilizer had been unloaded from the car and stored in the warehouse, as the result of a storm, the warehouse was unroofed, and a part of appellee's fertilizer was damaged by rain. Some time thereafter, appellee caused a part of his fertilizer to be removed from the warehouse, and stored elsewhere. He testified that as the fertilizer was being hauled, he discovered that some of it was damaged, and that about a dozen sacks were left in the warehouse on account of their damaged condition. It was for this damage that he sought a recovery. It was shown without dispute that the fertilizer was in good condition when it reached its destination.

There was some conflict in the evidence with respect to the method of shipment; that is to say, appellee's evidence tended to show that the shipment was to be made direct to him by Local Freight, while appellant's testimony tended to show that it was agreed and understood that it was to be shipped in the car with Coleman's fertilizer in order to make a car load, which would carry a freight rate of $1 per ton less than the local rate, and that it was understood that appellee would allow Coleman this difference for the expense of unloading it, rather than pay it to the railway company. However that may be, it is manifest that the method of shipment was in no sense the proximate cause of the damage complained of. When the shipment reached its destination, and appellee was notified thereof, and paid for it in the manner stated, and the bill of lading surrendered, the title to the goods passed to him, the transaction was complete, and for the subsequent loss and damage appellant was in no wise responsible. The loss and damage resulted from the failure or neglect of appellee to sooner remove his goods from the warehouse, where they had been stored some three or four weeks, before the damage occurred. The loss must fall upon him, and not upon appellant. Moreover, if he had desired to rescind the transaction because of the method of shipment, he must have rescinded in whole. He could not rescind in part, and affirm in part. Appellee, in our view of the record, is not entitled in any aspect to recover.

The judgment is reversed, and one will be here rendered in favor of appellant.

Reversed and rendered.